Good morning, your honors. My name is Mark Borenstein, and I'm representing the plaintiff appellant, Leonard McSherry. In this case, the district court improperly applied Rule 50 to dismiss plaintiff's claims under 42 U.S.C. section 1983 before the trial started, before a juror was sworn, before any evidence was heard, and before in the language of Rule 50 plaintiff had been fully heard on the issue, or heard at all on the issue, of qualified immunity. Here, plaintiff's evidence was not presented at all. Hence, the motion should have been denied, subject, of course, to raising it after plaintiff had presented his evidence, which, in the words of the Echevera case, which we cited in our letter to the court, the new Fifth Circuit decision, which was decided after the briefing closed, means when the party against whom the motion is made rests his case. Now, although the defendants have repeatedly said that Rule 50, that a motion under Rule 50 can be made at any time, they've cited no authority for that proposition. The Fifth Circuit in Echevera made the same point. Quote, although the defendants in the instant case contend that a district court may enter judgment as a matter of law at any time, they have no authority for that position. While subsection 2 of Rule 50. I read Echevera, and one of the questions that occurred to me is, that was a Jones Act semen claim, slip and fall. Does it make a difference that we're dealing with an issue, qualified immunity, that the Supreme Court has told us on more than one occasion ought to be resolved at the earliest possible instance in civil litigation, because it is, as opposed to an affirmative defense, a complete defense, and that the officers need not suffer the indignities of having to stand trial if they have a legitimate claim of immunity? I understand. I don't think it makes any difference at all for purposes of Rule 50. There were a number of procedural motions that could have been raised by the defendants had they wished to bring the matter of qualified immunity to the court's attention for a resolution or potential resolution before the first, before the jury was to be sworn, and they failed to do that. It could have brought a motion to dismiss, although unlikely that would have resulted in anything in their favor. It could have brought a summary judgment motion in a timely way. They didn't. They could have asked the court for permission to bring a summary judgment motion even after the deadline set by the district court, and they didn't do that, although they did ask the district court to bring a summary judgment motion on a collateral estoppel issue, but not that. And so, you know, I don't think it makes a difference in this case because the timing of a procedurally correct pretrial motion for deciding or considering the issue of qualified immunity was entirely within the defendant's purview. They could have done it at an appropriate time, and they didn't. But more importantly, a summary judgment motion which would have tendered the issue would have been on the basis of evidence. I mean, they would have had to either produce evidence or point to something in the record showing the absence of evidence, and then the burden would have shipped to us to produce declarations or to point to evidence somewhere in the record already produced that in fact negated the qualified immunity affirmative defense. Here, on the Rule 50 motion, the district judge didn't do any of that. He had no evidence at all. He had nothing to point to. The only thing he pointed to was the prior conviction of the defendant and that we – of the plaintiff, I'm sorry, and that we think actually supported the inferences that a reasonable jury could have found about fabricating evidence and presenting evidence that they know or should have known was pointing to an innocent man. Mr. Morency, help me with sort of how this all happened. I took a look at the court file to try and figure out what it was that Judge Klausner had before him, and maybe you can help me with the timing. As I understand it, the parties had completed discovery. The motions, deadlines, and so on had passed. Then there was a flurry of deposition activity of expert witnesses by both sides. Then there were the typical Rule 16 pleadings that were filed, basically summarizing the contentions of the party, listing the witnesses and what they would testify to. And there was a motion filed by the city on the morning that you thought the trial was going to start, but it turned out that they'd obtained an ex parte continuance, and the trial was actually not going to start until a week later. So am I correct in assuming that Judge Klausner had read the file in preparation for the start of the file, looked at the summary of the evidence that was going to be proved up by the plaintiff and the defense, and then in response to the city's Rule 50 motion decided that there might be a serious question as to whether you could meet your burden of proof on a prima facie case? Well, I'm not sure about one part of that. I don't know what Judge Klausner considered or looked at in anticipation of the trial. And there were a flurry of motions in limine that were also decided on what was supposed to be the first day of trial. And if you look at the memo, if you look at the evidence, not the evidence, if you look at the statements that were made in the pleadings that replaced the complaints and the answer, the memo of contentions, the pre-trial conference order, which the judge never signed or approved. That was going to be my next question because the copy I looked at didn't contain a signature. He never did. And the argument didn't produce any evidence. What it was was a summary, and it was only a summary because, as you know, Your Honor, under Rule 16, the local practice in the central district, the pre-trial conference order, and the memo of contentions aren't supposed to be evidentiary. They're supposed to be a summary in a global sense of what the parties anticipate they will be proving. And so with that record, there still had been no evidence. And so what Judge Klausner actually considered or looked at, as far as we can tell, and as far as his oral opinion is concerned, he only pointed to the Rule 50 motion and to the opposition to the Rule 50 motion that he had been timely filed, but for some reason had been misplaced and he lost it and it had been refiled, and he read it just before the hearing commenced. The only thing that he pointed to in terms of the decision that he made was the motion and the opposition to the motion and the oral argument that the parties had made about the motion. Now, he ordered a response to the motion, did he not? Well, it's curious. You know, when the motion was actually delivered to the courtroom on what was supposed to be the first day of jury selection, he was kind of tentative about whether he wanted a response or didn't want a response. And said we could file one if we wanted to, and we did file one on the Wednesday that he specified we should file it. So he did invite an opposition in writing which we submitted. He certainly didn't indicate he was going to convert it to a Rule 56 motion and that you should treat it accordingly. Absolutely did not. And although it's hard to really discern what was going through the judge's mind when he was continuing the trial, which he didn't want to do because he had a very packed trial schedule and he told us that if we continued it a week, we were going to be facing two other trials that he had committed to try the week that he was going to continue it to. What was your estimate of the length of this trial? The parties had, at Judge Klausner's direction, met and conferred and had narrowed their witness list down and pared their estimates down to a total of 35 hours. You were going to put all those people on for 35 hours? Oh, yes. Because I think so. And the estimate was by experienced trial lawyers that knew their case very well, had tried many cases and were familiar, unlike Judge Klausner, who acknowledged it wasn't his case. He wasn't really familiar with it. Who, you know, lawyers who believed that they could do it then and expected to do it in that. And so it was, to say the least, astonishing when you look at the text of Rule 50 to hear Judge Klausner rule as he did. That the theory of liability that was advanced by the plaintiff was credible, was solid in terms of Devereaux and a number of other cases, but that the motion under Rule 50 had to be granted because he did not see any evidence in the record to support the theory that plaintiffs intended to advance. That's what prompted my earlier questions, because I'm wondering, what is it that he was looking at? And the only thing I could find in the court file was the Rule 16 pleadings, which would summarize what the witnesses were going to testify to and what the contentions were. In a general way. Very general. I agree. As far as you know, there wasn't anything else that he could have been looking at if he hadn't been initially assigned to this case. There was nothing else he could have been looking at, and I'm not sure, based on what he said in his oral ruling, that he was even looking at the Rule 16 pleadings. I do know that he was looking at Mr. McSherry's prior convictions, because he mentioned that in his oral ruling. And I do know that he reached the conclusion somehow that the Rule 50 motion, which wasn't a summary judgment motion, had to be granted because, quote, the court finds at this time there has been no such evidence presented. And that was evidence of fabrication or of using evidence that they knew was false to charge an innocent man. So, you know, it seems to me that there can't be any basis for this Court to sustain a Rule 50 motion, a trial motion that the advisory committee said has to be done after evidence is presented, that Etcheverria says needs to be presented after evidence is presented, that even in this circuit in the Lalonde case, which criticized Judge Reel's practice of a pretrial evidentiary hearing, still said after evidence was presented that there simply is no basis in this record for Judge Klausner to have ruled on the Rule 60 basis. And that's true. That's true even though qualified immunity is a defense from suit. And as Judge Trott noted in his concurring opinion in Lalonde, when you have evidence from which conflicting inferences can be drawn and evidence from which, you know, the jury could say I just don't believe that witness, then even, and the theory is sound, and Judge Klausner acknowledged the theory was sound, that the disputed facts, quote, should have been submitted to the jury even if qualified immunity from suit was an issue. Issues of credibility belong to the trier of fact. The Seventh Amendment to the Constitution so requires. I mean, it may be that at the end of our presentation of our direct evidence, the district judge will entertain a Rule 50 motion again, but then there will be an evidentiary record on which to rule. And there is no evidentiary record in this case to rule on Rule 50 or even to rule in a quasi-converted summary judgment motion. And of course, on the substance, you know, there were only two issues that he needed to consider. One was there a constitutional right violated, and he conceded that the theory that we advanced, knowingly fabricated evidence and relying on knowingly false evidence to assert and have an innocent man arrested, was constitutionally viable. This Court and other courts have made that clear. So then the only other question is whether it was clearly established law at the time of this event that you can't use fabricated evidence. And so did he press you at the argument on the Rule 50 motion for what your evidence was of deliberate fabrication? No. We did say some of it. We recited some of it. But, you know, you can't use a Rule 50 motion to basically invade word product. I mean, all of the evidence is there. Everybody has the depositions. Everybody has the documents. You know, how that's presented and what inferences we're going to ask the jury to draw from the evidence that's presented, you know, is the word product that we're going to present at a trial. And as I recall, in your opposition, you took that tack. Look, we're not going to let the city smoke out our trial theory or strategy here. Strategy. They know what the evidence is, just like we know what the evidence is. And at the oral at the argument on the Rule 50 motion, which when I looked at the record last night, I curiously only found Judge Klausner's ruling and not the oral argument that led to Judge Klausner's. It's the same problem. And I was hoping that the parties would have given us the full transcript. And, you know, we intended to, and I'm just not sure why that is. But nevertheless, there was a discussion on the record, but not in the appendix. But it is in the record of the entire. We'd have to get what? We'd have to get the transcripts from the district court file. Yeah. Or perhaps Mr. Hong and I can agree and we can present it to you if, you know. If we need it, we'll ask. Okay. And so under the Saucier test, in terms of what was before Judge Klausner, he had to look at the theory, which he said was valid. And then he had to decide whether there was any evidence presented that it wasn't clearly established as of 1988. And nobody has ever argued in this case that it was not that that rule of law on qualified immunity was not clearly established in 1988. He certainly couldn't have evaluated the evidence because there was none. I'd like to turn to the two evidentiary issues that the judge, the district court decided prior to the trial. One concerned the admission of the Valdispino confession evidence. The judge excluded it. It was where the man's DNA matched the DNA collected at the scene. And his confession that confirmed in virtually every single respect the evidence that had been gathered from the victim immediately after the crime and from the victim's brother immediately after the crime and from purported eyewitness immediately after the crime. And that contradicted completely the evidence that was collected six and eight weeks later, ten weeks later, from the victim and others. The confession occurred when? The confession occurred in 2001. 2001. So how is it? I can understand why you would want to get it in. But from a prejudice prong standpoint, the jury has to look in at what the officers knew in 1988 at the time they convict your conviction of your client. So how did the district court abuse his discretion? Three reasons. I had a question about that as well. I mean, how does the fact that he confessed to the crime create the inference that Candace's descriptions were fabricated by the police? First of all, the district court didn't reach the prejudice prong. He didn't rule on that basis. He ruled that the evidence was irrelevant, just like you're asking the question. It's relevant for three reasons. First, the confession confirms the accuracy. I'm conceding relevancy. I guess I'm asking whether – because you have to show abuse of discretion here, and the discretion, I think, has to include a balancing of its probative value versus the potential for prejudice. Okay. Well, the prejudice that would result is not the type of prejudice that there were gruesome scenes that it would – No, no, no. I mean, it's undue confusion of the issues and, you know, jury's ability to, you know, distinguish what the police knew in 1988 versus what we now know in 2005. Well, and that, you know, this was evidence that would have been presented in a summary fashion. It wouldn't have increased or enhanced or lengthened the trial by any material issue. And it seems to me – we never did argue the prejudice prong to the district judge. So the balancing that the district judge did didn't include that. I mean, the judge simply said that it was not relevant because it was in 2001 and not 1988. But the evidence was highly probative and corroborated all of the early evidence that the police department had collected concerning the perpetrator, concerning the car, concerning virtually all aspects of this crime. And one of the theories on which – But isn't the issue that the jury has to decide whether whatever the state of the record was in 1988, and the investigative record, that whatever information was supplied was not susceptible to the conclusions that they reached that pointed to your client, that the eyewitness descriptions were off, that the color of the car was wrong, that the alleged crime scene was suggestively planted in the mind of the six-year-old. Right. Isn't that what the jury has to decide? And how does – The jury has to – I'm sorry. And so how does the confession in 2001 by the guy that you contend obviously did it help the jury in assessing the reasonableness of the investigative techniques and the conclusions that the sex crimes detectives reached in 1988? Because the evidence is going to show at trial that these officers attended classes designed specifically to – training them on how to elicit information from trial witnesses and evidence that will show that they understood in 1988 that the first evidence obtained from the first interview, the first evidence, is the most reliable evidence. So we're going to have experts say that that's what they were taught and that's the state of – But you didn't exclude the expert testimony, did you? No, no. But the experts are going to say that that evidence is highly reliable, and here we have corroboration of the experts' evidence that, in fact, it is highly reliable, and here is the guy who did it who matches in every respect the evidence that the young woman gave, that another child gave, that another witness gave. So it corroborates the expert testimony. It also supports the testimony of the witnesses' initial identification, which the defense will try to undercut. They're going to say – they're going to have witnesses that say, oh, no, no, no, no, no, no. You can't – you must disregard, it's not reliable, the first evidence that you obtained from the child witnesses. And so the Valdostino confession corroborates the evidence of the child witnesses. I think we have your point. You're out of time, so we'll let the city take the podium now and hear what they have to say. Thank you. Thank you, Mr. Borenstein. Good morning, Your Honors. On behalf of the city of Long Beach, Norman Turley and Carthrell Robinson, the appellees. I submit, Your Honors, that the use of the Rule 50 motion and what we are relying on is 50A2 portion of the Rule 50 motion was particularly appropriate in this situation, particularly in light of the fact the decision here rests on qualified immunity. And as Sarah said, that the qualified immunity, like an absolute immunity, is effectively lost if a case is erroneously permitted to go to trial. Consequently, as Judge Tallman has mentioned earlier, it is the purpose in these qualified immunity cases to try at the very earliest point in time to make a decision on the qualified immunity. Well, let's assume this is true. Rule 50 says, after the party has been fully heard. How was McSherry fully heard in this case? There are two responses to that, Judge Nelson. First of all, Rule 50A2 does not contain the language, has been fully heard. 50A2 says motions for judgment as a matter of law may be heard at any time before submission of the case to the jury. So from the day the complaint is filed? Yes, from the day the complaint is filed. We have a recent case, Your Honor, of Wong versus the U.S. Immigration and Naturalization Service from the circuit, which was decided this past December. And it goes into the tension between qualified immunity, the early decision on qualified immunity, and deciding it merely on the complaint. Go ahead. Let's assume we agree with you that timeliness isn't the question. On this record, and the court had to look at what it had before it, do you agree with that? Yes, absolutely, Your Honor. And what it had before it was a description of a child which any reasonable person would have thought the scene was a motel room. A room, no pictures on the wall, and a bathroom with up steps and that's that. Then they also had, on this record, a police officer who had not been to the scene that McSherry described, his grandmother's house. The police officer hadn't been there. The child, as it turns out now we know, hadn't been there. So we had a pretty detailed description, and that detailed description came from McSherry, didn't it? No, well, it depends on what you're looking at. Yes, there was a description. McSherry was asked by the police officer to describe the scene, to describe his grandmother's house, and he described it. And he was asked for detail, and he gave it. So the police officer didn't know the detail. The child didn't know the detail. One trying this case could conclude that the police officer got the detail and planted it, and that his purpose was to get it so that he could plant it. Now, I'm not suggesting that that's the only conclusion or that that's a necessary conclusion, but it certainly is a possible conclusion. And when you have a record with a possible conclusion, it's not appropriate to grant summary judgment, to grant the Rule 50 relief, even if we look at A2. Now, do you want to tell me where that summary is wrong? I think the summary is not wrong, but it puts the emphasis on the wrong part or a secondary part of this case and the criminal prosecution. The point that was most telling in this case, from the criminal standpoint, and the complaint of the plaintiff in this case, is the investigative technique and the interview of the child, which resulted in numerous identifications of the appellant McSherry. Because we have the police officer. This is a stranger. Nobody would deny that that is a part of the record. But her initial first interview, she described the stranger, and she described him in a way other than a way that would be consistent with what she later said. Yes. And that that is true. And that is not unusual to have disparity in initial descriptions. However, we then follow this up with two interviews in the hospital with a photo six pack, as I believe it is called. There are witnesses there when the police officer is interviewing this six year old little girl. She identifies McSherry on the first occasion. She said, I want to go out to play now. In other words, she that was it is some subsequent. The second one. And then we have a very clear situation where there is a live lineup. And when she initially identifies the person, it is the wrong person. They leave the live lineup. And she says in front of the public defender who defended Mr. I chose the wrong person because I was afraid. And the real person she identifies is Mr. McSherry. Then we have in this there. There is no evidence of any undue influence or or coercion with respect to the neighbor who identifies Mr. McSherry at the live lineup and at trial. The child again identifies him at the preliminary hearing. You know, the problem, Mr. We aren't going to weigh the evidence. And that is for a trier fact. And the trier fact could certainly consider what you're suggesting. But here we look to see. Has McSherry raised a constant, a possible constitutional violation? And that is the description of the grandmother's house was so detailed that she wanted to know who's been in my house. And even to the blue sheets. Well, when that happens and we have a record where it's perfectly clear. The police officer hadn't been there. The child hadn't been there. The description had to come from somewhere. And a reasonable presumption is that it came from McSherry himself when the police officer questioned. That's how the details got in the record. And when we have that kind of record. And we have only one possible solution, and that is that the police officer, knowing what he could do, did it. How do you how do we say he's entitled to a qualified immunity? I think very easily, Your Honor, because if you look at the gist of the claim that the plaintiffs have made here, it is that the police officer engaged in investigative techniques in the interview of this child in a child abuse molestation case. And what Devereux tells us as a matter of law is that and Devereux is decided in 2000 is that there never has been a constitutional right. To have a particular manner or technique or method in which. Child witnesses involved in a an abuse molestation situation interviewed in a particular way or the investigation carried on. What else Devereux tells us is page 10, 74, 75. There is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government. Doesn't Devereux tell us that? Devereux does indeed say that. And if it says that and the only way this description could have could have been as detailed and as accurate as it was, is that a police officer had to get the information and then point it. The detail that is in really question here, though, is not in question. It was it was accurate. Now, the detail that is being raised in question by the plaintiff here is his identification and the way in which his identification came about. And if you then apply Devereux, which says we are also persuaded, however, that there is no constitutional due process right to have child witnesses in a child sex abuse investigation interviewed in a particular manner or to have the investigation carried out in a particular way. Mr. Holland, you've been around long enough to know exactly why that's there and it's necessary and it's correct. And I think it also applies to use your you have to use the approach, depending upon all of the circumstances, the child. It's it's we nobody is going to argue that that's bad law. But there's the other point in Devereux. And that's the point that I raised and asked you about. And if it's there, what do we do about it? Well, it is certainly a point that is there. That is one of the things that they're complaining about. But the problem that the plaintiffs have in this situation is having had to labor through the rule 16 and putting all the pretrial things together is no simple task. And it is requires great detail. It requires that you put in the facts, not just a brief summary, the witnesses, what the witnesses will testify. All of that was there before the court. And if you look at the judge, there had looked at all of that on the just before trial was about to begin. And that's when he began to have concerns that maybe your rule 50 motion was well stated. I believe so, Your Honor, because between. I think you recite you recited very accurately the sequence of events that occurred here. And when the rule 50 motion was filed between that date and the hearing date, there was a full week. And Judge Cosner was obviously prepared to deal with the rule 50 motion as he took it up as one of the first things as we proceeded with the trial. So I think that when you use the provision of rule 50, a two, which does not. It is the 1991 amendment to the rule. When you apply that rule to our situation, coupled with the public policy or the policy rather, that is attached to qualified immunity. There's no doubt here that the use of the rule as Judge Cosner employed in this situation was correct. That's a real case, I think, is an anomaly from the Fifth Circuit, because what it really does. And it is of no help. And I would hope that this circuit doesn't adopt that rule. What it does is it, for all practical purposes, eliminate the whole purpose of the 1991 amendment in rule 50, because what it reads into the a two is that any time means also has been fully heard. And that isn't what the rule says, nor does the advisory committee comment suggest that at all. So obviously, it doesn't mean that nothing needs to be heard before it's granted. I mean, even under your interpretation of 50, a two. I don't believe that it requires that there be any hearing, that there be any evidence submitted or the trial has to even well, the evidentiary phase of trial starting. Now, if you can make a decision, would you explain that? The evidentiary phase had started. It's my understanding no evidence was introduced. That's correct. And I think that under a two, a court is able to, if there is a question of law that resolves the case, can, with the information it has, even if it's only the complaint, make a decision with respect especially to qualified immunity. Well, except in this case, as the questions from Judge Ferris, I think, point out, in order to determine qualified immunity, you have to consider the evidence with regard to the actual investigation that was conducted. And the concern I have here is the procedural one, that if the court was really intending to convert the rule 50 motion into a rule 56 motion, which he could have done, wasn't it incumbent upon the court to give notice to the plaintiffs that that's what he intended to do? So that rather than simply waffling about, well, maybe I need a response in opposition and maybe I don't, he should have said to them, look, Mr. Bornstein, I think that the city may have a good point here, and I'm going to treat this as a summary judgment motion, and in your opposition, you better lay out the evidence that you have to defeat a motion for summary judgment on qualified immunity. And, I mean, I suppose he could still do that and grant Mr. Bornstein the relief that he's requesting and send it back. We don't have to send it back for trial. We can send it back for such further proceedings as the district court ought to conduct on a full evidentiary record. Well, I think the response. I know you don't like the latter part of my answer. I think the answer to this is that here we have an immunity, a privilege, which the court is trying to decide based upon all the guidelines that have been set forth by the U.S. Supreme Court. And what he had before him, and if you have an issue, it is much like a summary judgment, and there is a lot of the case law that deals with qualified immunity says this, that if you have any question about disputed facts, what you do is you assume the facts most favorable to the plaintiff. Now, under these circumstances, he had the pleadings, the pretrial matters all before him. Assuming. He didn't have an evidentiary record, which he would have had if you had timely filed a Rule 56 motion, a partial summary judgment, or actually in this case it would be a complete summary judgment motion, on grounds of qualified immunity. He would have provided affidavits with supporting declarations and deposition transcripts and so on. The plaintiff would have been able to respond to it, and then he could have seen whether or not he had contested issues or material facts. Well, even assuming. That is true. I mean, there is no doubt that that Rule 56 motion will do that. But where the case law tells us that you can make a decision on qualified immunity before going to an evidentiary stage of trial, that is a pretty powerful directive to a district court to make this decision. I've never seen a Rule 50 motion granted other than at the close of the plaintiff's case. I recognize that I suppose it's theoretically possible to grant it in the middle of the plaintiff's case, and I think I saw a case that says you can do it at the close of opening statements, although that one gives me some pause. But I've never seen one before the first juror was selected. Well, that, I think, is because in most of the cases, including Echeverria, the motion wasn't made until after there had been some evidence introduced. Now, if we don't have a factual situation or any case that's gone up on appeal where nobody has done it until that point in time, yes, we have no decision. And the Ninth Circuit should boldly go where no other court has gone before. No, I don't believe that's the case at all. Our track record in 1983 cases is not too good in the Supreme Court. Well, maybe I could help you along. Only because I got reversed the last time. I understand it. But I think that this is a proper use taking into consideration the policy issues that we're dealing with on qualified immunity. I mean, I think that's the whole point of this matter. And, you know, as a practitioner, I think if I had come up with a process and procedure, just because nobody else has thought of using it and it is permissible, I don't think it's a great step for the Ninth Circuit to say, well, we're going to interpret Rule 50A2 just the way it reads. I don't think that the circuit would be going out on a limb at all. All right. Thank you very much. Thank you very much. And yes, you probably also know that the circuit doesn't mind going out on the limb. We want to we want to be right. And if we think we are right, Supreme Court can do whatever it wants to do. Well, I'll take my decision either way. Go ahead. I just have a minute or two, Your Honor, to raise three points. The issue on Rule 50A2 was precisely before the Fifth Circuit and Etcheverry. They said, quote, while subsection 2 of Rule 50A permits a party to move for judgment as a matter of law, quote, at any time, end quote, before the case is submitted to the jury, that provision does not mean the nonmoving party loses his opportunity to be fully heard under subsection 1. Second, I don't know. And there's nothing in the record that says that Judge Klausner actually reviewed the pretrial papers before he made the decision. As I noted, the oral opinion that he gave doesn't refer to them at all. But here is just a glimpse of the specificity that these pretrial papers had. I read them and my colleagues can do the same. I think we've got that issue in mind.  Yeah, and then third, I think the whole argument by counsel underlies our point. There are evidentiary facts here in dispute. There are facts that need to be resolved not on summary judgment because they're in dispute, but at a trial where a jury can look at the witnesses. The last point is the point that we raised in our brief. I think that the record is so clear that Judge Klausner has prejudged this case. He has decided that the only relevant fact here was the prior conviction and not – and didn't even permit the introduction of evidence that shows how that prior conviction actually supports an inference of fabricated evidence. And it seems to me under this – the facts of this case, the arbitrary time limit, the granting of the Rule 50 motion, the reliance on the prior conviction. Well, you ought to quit when you're ahead because there's nothing in this record that shows prejudice on the part of the judge. He may have made a mistake, but he certainly pondered the case. Doesn't the record show that? Well, I'm not sure what he – I'm not sure what he pondered. I don't know what he pondered, but he didn't just hand up the order, sign it, and go on against your client. No, but the only thing he did say, Judge Ferris, is the reference to the prior convictions. That was the only evidence that he considered. And he didn't – and because he granted the Rule 50 motion, he refused to even hear the other evidence that would have – that would, in our view, a jury would have drawn inferences of fabricated evidence. I think we have your argument in mind, and I have let you both go a little bit. You have. And I really – I appreciate it very much. Thank you. Well, we appreciate the arguments. Thank you, both counsel. The case just argued is submitted. We'll take a ten-minute recess before we hear argument in the last two cases on the calendar. All rise. Total center recess, approximately ten minutes. Thank you.
judges: Farris, D.W. Nelson, Tallman